Filed 5/25/22  In re King A. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re KING A., a Person Coming Under the Juvenile Court Law. | B315030 (Los Angeles County Super. Ct. No. 18LJJP00322) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ALEXUS S., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Susan Ser, Judge.  Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

———————————

Alexus S. (Mother) appeals from the juvenile court's order terminating her parental rights under Welfare and Institutions Code section 366.26.[1]  Mother's sole contention on appeal is that the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with its duty under state law implementing the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) to inquire of unspecified extended family members whether her child, King, may be an Indian child.  (See § 224.2.)  We agree with DCFS that any such failure was not prejudicial and, on that basis, affirm the court's order.

## BACKGROUND[2]

A.A. (Father) is not a party to this appeal.

DCFS received two referrals in April 2018 relating to King, who was three years old at the time: the first arose out of an instance of domestic violence involving Mother and her then-boyfriend, and the second referral was made by Father, who alleged that Mother used drugs in King's presence and neglected

---

[1] All subsequent undesignated statutory references are to the Welfare and Institutions Code.

[2] Because the sole issue on appeal is compliance with the state statute implementing ICWA, a detailed recitation of the non-ICWA related background is not necessary to the resolution of this appeal.

2

him.  After Mother was arrested for vandalizing maternal grandmother's home, DCFS sought a removal order.

DCFS filed a juvenile dependency petition under section 300, subdivision (b), alleging that Mother has a history of violent and assaultive behaviors and a history of substance abuse.  In the ICWA-010 form dated May 21, 2018, which was appended to the petition, the social worker reported that King had no known Indian ancestry based on in-person discussions with Father on May 1, 2018, and with Mother on May 15, 2018, in which both parents denied any Indian ancestry.  At this point, Mother was still living with maternal grandmother.  In a statement of cause in support of King's removal from Mother, a social worker also reported that Father "denied ICWA by signing the DCFS 5649."  Father and Mother subsequently filed ICWA-020 forms, and both stated, "I have no Indian ancestry as far as I know."

On May 23, 2018, the juvenile court held the detention hearing.  Mother and Father were present.  The court noted that both parents had reported no known Indian ancestry and found that ICWA was not implicated in the case.  The court found a prima facie case for detaining King from Mother and released him to Father.  The court's minute order informed Mother and Father that they were "to keep the Department, their [a]ttorney and the [c]ourt aware of any new information relating to possible ICWA status."

On July 24, 2018, DCFS filed another juvenile dependency petition, alleging domestic violence between Mother and Father and that Father allowed Mother to have unlimited access to King in violation of juvenile court orders.  Maternal step-grandmother

3

was identified as a potential caretaker for King,[3] and he was ultimately placed with her. DCFS also filed a detention report on that day which noted: "On 5/23/18, the [c]ourt stated 'the [c]ourt does not have a reason to know that this is an Indian child, as defined under ICWA.' "

A jurisdiction/disposition report filed on September 12, 2018 contained a similar statement regarding ICWA. The report also reflected that DCFS had interviewed maternal step-grandmother, maternal grandfather, and paternal grandmother. There is no indication in the report that any of these individuals was asked about the possible Indian ancestry of King. The report also indicates that a social worker was attempting to get in contact with a paternal aunt and paternal uncle.

In March 2019, King was re-placed from maternal step-grandmother's home to maternal grandmother's home.

At a hearing on July 17, 2019, the court terminated reunification services for Mother due to her nonexistent progress. A last minute information for the court filed on the day of the hearing stated that Mother had resided with maternal grandfather in January 2019.

Status and interim reports filed in September 2018, May 2019, July 2019, and December 2019 all stated that the juvenile court had concluded that ICWA did not apply. However, a detention report filed August 14, 2020 stated that "[t]he Indian

---

[3] Because maternal grandfather did not initially pass the criminal clearance, he and maternal step-grandmother made "a 'sacrifice' by living separately" to allow King to be placed with maternal step-grandmother. The maternal grandfather "submitted for the proper clearance" and was ultimately approved as a caregiver.

Child Welfare Act does or may apply.  The maternal grandmother denied knowing if child [King] had Indian ancestry.  Parents did not make themselves available to meet with [the children's social worker] in person and complete the DCFS form 5649."[4]  This report was filed following allegations of general neglect against maternal grandmother in connection with the death of King's infant brother who was also in maternal grandmother's care.  The report identified maternal aunt as a relative to consider for placement.

The subsequent status report filed on August 19, 2020 once again stated that the court had found that ICWA did not apply in May 2018, as did a jurisdiction/detention report filed September 21, 2020.  The jurisdiction/detention report identified several extended family members as possible placements for King, including maternal aunt, maternal grandfather, and maternal step-grandmother.  The report indicates that a social worker spoke with each of these individuals but does not reflect that the social worker asked them about the Indian ancestry of the child.

On September 28, 2020, maternal grandmother filed a form request to change court order seeking King's return to her home following his removal.  In the portion of the form regarding information about Mother and Father, maternal grandmother left the line reading "Indian tribe (*if applicable and known*)" blank.

At the 18-month review hearing on October 7, 2020, the juvenile court also terminated Father's reunification services.

---

[4] This claim is contradicted elsewhere in the record.  For example, as noted above, a social worker had reported that Father "denied ICWA by signing the DCFS 5649."

Father testified at this hearing that he was living with paternal grandmother.

The "366.26 WIC" report filed January 26, 2021 again stated that "[t]he Indian Child Welfare Act does not apply" and referenced the juvenile court's May 2018 order. This report also indicated that maternal uncle and his girlfriend and maternal grandfather and maternal step-grandmother had come forward and were being assessed by DCFS as possible placements. The report does not state that DCFS asked any of these individuals whether King may have Indian ancestry. King was ultimately placed with maternal grandfather and maternal step-grandmother on February 25, 2021.

A status review report filed March 19, 2021 noted again that the court had found that there was no reason to know that King was an Indian child and that no notice had been given to any tribe. The report also stated that a social worker had attempted to assess other relatives for placement, including a paternal aunt and paternal uncle. The paternal aunt had failed to provide identification when asked in November 2020 and January 2021. In March 2020, paternal uncle had informed a social worker that "he did not want any part of DCFS" and refused to meet with a social worker, and he also refused to provide his date of birth or an identification card. The report also stated that maternal uncle and his girlfriend were still in the process of being assessed.

A status report filed May 20, 2021 again stated that the court had found that there was no reason to know that King is an Indian child. The report noted that King had been placed with maternal grandfather and maternal step-grandmother and appeared to be doing very well in the home. It further stated that

6

maternal grandfather and maternal step-grandmother had informed DCFS that they were committed to adopting King. DCFS recommended that the juvenile court terminate parental rights to allow for adoption planning.

On August 31, 2021, the juvenile court held the permanency planning hearing. Mother was present by phone and Father did not attend. The court stated that it had "no reason to know that [King] is an Indian child." It further found that adoption was in the best interests of King and terminated Mother and Father's parental rights.

Mother timely appealed.

## DISCUSSION

Under California law implementing ICWA, "the child welfare agency and the juvenile court have a statutory initial duty to inquire into whether a child is, or may be, an Indian child." (*In re Darian R.* (2022) 75 Cal.App.5th 502, 507, fn. omitted.) This "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, *extended family members*, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b), italics added.)

DCFS does not dispute that it failed to interview members of King's extended family concerning his possible status as an Indian child, other than maternal grandmother. DCFS's failure to do so was error. Whether we reverse depends upon whether this error was prejudicial. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742.) In the cases decided after *Benjamin M.*, we have concluded prejudice exists when DCFS fails to conduct an initial inquiry of extended family members if the record

7

discloses that there was readily obtainable information that was likely to bear meaningfully upon whether a child is an Indian child. (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1017; *In re S.S.* (2022) 75 Cal.App.5th 575, 582.) As we describe below, there is no prejudice here.

Mother does not identify any specific family member who should have been asked about King's Indian status or identify anyone in King's family from whom further inquiry might have yielded information that was likely to bear meaningfully upon whether King is or may be an Indian child.

We consider whether DCFS's failure to inquire was prejudicial with respect to the extended family members mentioned in the record. In addition to asking both Mother and Father, who denied having any Indian ancestry, the record shows that DCFS asked maternal grandmother about Indian ancestry, and she indicated that she was not aware of any. Further, in a form request to change court order filed by maternal grandmother, in which she sought King's return to her home following his removal, there was a line stating, "Indian tribe (*if applicable and known*)," which maternal grandmother left blank.

Maternal grandfather sought clearance to have King placed in his home and is seeking to adopt King with maternal step-grandmother. As this court observed in *In re S.S.*, *supra*, 75 Cal.App.5th 575, because preference is given to placing an Indian child with extended family both for fostering and adoption (25 U.S.C. § 1915(a) & (b)), there is a strong incentive to bring to the court's attention any facts suggesting that a child is an Indian child. Nonetheless, the maternal grandfather and maternal step-grandmother did not so do.

The record indicates that maternal aunt and maternal uncle were also considered for placement. However, as neither maternal grandmother nor maternal grandfather disclosed knowledge of any Indian ancestry, it is speculative to assume that their children would have information their parents did not.

Turning to King's extended paternal family members, there is no indication in the record that DCFS asked any extended paternal relatives about their Indian ancestry. However, Father affirmatively represented on multiple occasions that he had no Indian ancestry. That paternal grandmother, aunt or uncle would have provided any different information is again speculative. The record suggests that paternal aunt and uncle may not have been forthcoming with information even if asked. The social worker spoke with paternal aunt twice and asked her to provide identification so that she could be assessed, which she did not provide. Paternal uncle stated that "he did not want any part of DCFS" and refused even to provide his date of birth or identification to a social worker.

Furthermore, both Mother and Father were instructed to provide new information relevant to ICWA to DCFS and the juvenile court. Notwithstanding the advisement, the length of the proceedings, and that at times during the proceedings Mother lived with maternal grandmother and maternal grandfather, respectively, and Father lived with paternal grandmother, neither Mother nor Father advised the court of any additional information about Indian ancestry.

Mother asserts that *In re Y.W.* (2021) 70 Cal.App.5th 542 compels reversal here. We disagree. In *Y.W.*, the mother was adopted at age two, and DCFS failed to make meaningful efforts to locate and interview her biological family, even after her

9

adoptive mother "blazed a new trail of ICWA information: She had access to knowledge about [the mother's] biological family the Department could have obtained with a phone call or email." (*Id.* at pp. 548, 553–555.) *Y.W.* is similar to *In re A.C.*, *supra*, 75 Cal.App.5th 1009, in which the "mother was the product of foster care and thus may not have known her cultural heritage," but "[t]he same may not have been true of her biological relatives." (*A.C.*, at pp. 1015-1016.) In light of this, and the fact that one detention report indicated that the child could have Indian ancestry, we held that we could not "conclude from this equivocal record that DCFS's failure to conduct *any* inquiry as to [the] mother and father's extended family members was not prejudicial." (*Id.* at p. 1016.)

Mother does not point to any facts in the record that would indicate that she or Father lack a relationship with their biological families or knowledge of their cultural heritage. Rather, Mother and Father easily "could have asked about potential Indian ancestry" while staying with family. (*In re Darian R.*, *supra*, 75 Cal.App.5th at p. 504 [no prejudice arose from failure to ask extended family about Indian ancestry where mother lived with extended family members and both parents eschewed Indian ancestry].)

Although there is a detention report in the record that states "[t]he Indian Child Welfare Act does or may apply," it explained that the reason for uncertainty was because Mother and Father purportedly "did not make themselves available to meet with [the children's social worker] in person and complete the DCFS form 5649." The record elsewhere contradicts this statement. Two years prior to that detention report, DCFS completed an ICWA-010 form that reported that the child had no

known Indian ancestry based on a social worker's in-person discussions with Father and Mother; a social worker reported to the court that Father "denied ICWA by signing the DCFS 5649"; and Father and Mother both filed ICWA-020 forms stating "I have no Indian ancestry as far as I know." We therefore find that this statement does not create an "equivocal record" as in *In re A.C.*, *supra*, 75 Cal.App.5th at page 1016.

"The record simply does not support mother's unvarnished contention that additional interviews . . . would have meaningfully elucidated" King's Indian ancestry. (*In re Darian R.*, *supra*, 75 Cal.App.5th at p. 510.) DCFS's failure to interview members of King's extended family was therefore harmless.

## DISPOSITION

The order terminating parental rights is affirmed.
NOT TO BE PUBLISHED


MORI, J.*

We concur:


ROTHSCHILD, P. J.


BENDIX, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11